IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DELMAR P. GRAY,            )
                           )
       Plaintiff,          )
                           )
v.                         )     Case No. 3:04-cv-118-JPG
                           )
CHARLES L. HINSLEY, et al.,)
                           )
       Defendants.         )

## REPORT AND RECOMMENDATION

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a report and recommendation on the Motion for a Summary Judgment (Doc. 30). For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED**, that Defendant Marvin Powers be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

**Procedural History**

Plaintiff, a former inmate in the Tamms Correctional Center, brought this action alleging deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Following the District Court's merit review, only Plaintiff's claim of constitutional retaliation remains against Defendants in their personal capacities as the Court dismissed Plaintiff's claim of medical indifference as failing to state a claim (Doc. 9).

In early 2007, the Court issued a Scheduling Order (Doc. 21) setting the discovery deadline at July 2, 2007, and the dispositive motion deadline for July 17, 2007. On July 11, 2007, Defendant Powers filed the instant motion for summary judgment (Doc. 30). On July 20,

2007, this Court issued a Notice and Order to Respond (Doc. 34) advising Plaintiff that Defendant Powers had failed to properly inform him of the Rule 56 procedures as required by Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982), and Bryan v. Madigan, 84 F.23d 246 (7th Cir. 1996), and further advising Plaintiff of the summary judgment procedures and the consequences of failing to timely respond. The Court extended Plaintiff's time to respond to August 20, 2007.

On July 18, 2007, Plaintiff filed a notice with the Court indicating that his address had changed and providing a new address for legal mail. Then on August 20, 2007, Plaintiff filed a Motion for Extension of Time (Doc. 35), requesting additional time to respond to the instant motion for summary judgment. In support, Plaintiff advised the Court that he was being held in the Cook County Jail as a detainee, and that his legal mail was going to his former address, not his new address in the Cook County Jail. Plaintiff alleged that he did not know of the pending motion for summary judgment until after he updated his address on July 18, 2007, and received the Court's Notice and Order to Respond.

The Court subsequently granted Plaintiff's motion, giving him until January 22, 2008, in which to file a response (Doc. 36). The Court also provided Plaintiff with a Copy of the Motion for Summary Judgment, (Doc. 30), Defendant Power's Motion in Support (Doc. 31), and a copy of Plaintiff's Complaint (Doc. 1), including all of the exhibits attached to the Complaint, to enable Plaintiff to respond to the instant motion.

On January 24, 2008, more than six months after Defendant Powers filed the instant summary judgment motion, Plaintiff filed another Motion for Extension of Time (Doc. 38) in which he sought an additional forty-five (45) days to respond to the motion without stating any reason why the extension was necessary. By separate order entered the same date as this report and recommendation, the undersigned judge denied this motion (Doc. 42). Even if the Court

2

were to have granted Plaintiff's motion, however, the requested forty-five days have passed and Plaintiff still failed to file a response to the instant motion.

**Substantive History**

With regard to Defendant Powers, Plaintiff alleges that he received inadequate health care from Defendants Powers in retaliation for his filing a lawsuit against him in June of 2003. The inadequate health care that Plaintiff alleges he received in retaliation was the same treatment that the District Court determined did not state a claim for medical indifference. What follows is a restatement of the allegations against Defendant Powers.

Plaintiff states that between July and December 2003, Defendant Powers refused to treat him for chronic "boiling" stomach pain and blood-tinged stools. Plaintiff states that on July 3, 2003, Defendant Powers examined him and did a test for blood in his stool, which was negative. Plaintiff states that Defendant Powers displayed "hostile unprofessional conduct" and refused him medical care. The medical record submitted with the complaint indicates that Dr. Powers performed abdominal, rectal and prostate exams, all of which were normal, and testing of a stool sample revealed no blood. Defendant Powers wrote, "complaints not corroborated."

On that same date, Plaintiff also began a hunger strike. Plaintiff states that the hunger strike was undertaken in an attempt to get proper medical treatment. On July 6, 2003, Plaintiff was given his hypertension medications in his cell by a nurse, at which time he showed her feces that had blood on it. As a result, Plaintiff saw Defendant Powers the next day, July 7, 2003. Plaintiff states that Defendant Powers refused to treat him, stating "there is nothing wrong." The medical record submitted with the complaint indicates that Plaintiff refused a rectal exam and a test to determine whether there was blood in his stool. Plaintiff states that on July 11, 2003, Defendant Powers accused him of eating while on his hunger strike (Plaintiff states that while he

was out of his cell, Defendant Powers entered it to look for evidence that he had been eating), and pressured him to end the strike. On or near that date Plaintiff was moved to the infirmary for observation. Plaintiff states that on July 14, 2003, his stomach pain was so severe that he voluntarily ended the hunger strike.

On July 22, 2003, Plaintiff had a bowel movement in the prison library bathroom that contained visible blood. He informed a corrections officer who summoned a nurse. The nurse took and tested the sample, which was positive for blood. As a result, he was seen by a nurse at sick call on July 23, 2003, and then on July 25, 2003, by Defendant Powers, who performed an autoscopy on Plaintiff which showed a small, bleeding hemorrhoid. Defendant Powers prescribed Anusol for seven days.

Defendant Powers examined Plaintiff again on August 25, and performed an abdominal exam which was normal. Plaintiff states he reported to Dr. Powers that there had been blood in his stool, but the medical record submitted by Plaintiff shows that Plaintiff complained of stomach pain and gas, but reported he had not seen any blood. Defendant Powers noted specifically in the medical chart that Plaintiff showed no outward indication of pain, stating "He entered the exam yelling greetings to other inmates, and was smiling in the exam room. He talks, laughs, moves around very well." Plaintiff states that Defendant Powers told him nothing was wrong and gave him no medication for his "ongoing medical issue."

Plaintiff states that while Defendant Powers was making his rounds, he told Defendant Powers of his stomach pain and blood in his stool on August 26, and September 2 and 9. Nurse Walton saw Plaintiff on September 29. He complained of stomach pain and constipation. The next day, September 30, on referral from Nurse Walton, Plaintiff saw Defendant Powers again complaining of "boiling pain," gas, and blood in his stool. Defendant Powers noted Plaintiff

4

appeared to be in no distress and an abdominal exam was normal. Defendant Powers noted in the chart, "will monitor." Plaintiff states that at the appointment, Defendant Powers refused to give him any medication. Plaintiff sent sick call slips on October 3, 9, 16, and 26, and on November 2, 10, 12, and 17, but did not see Defendant Powers again until November 19. Plaintiff again complained of blood in his stool and "boiling" stomach pain. Defendant Powers performed abdominal, rectal, and prostate exams, all of which were normal. Plaintiff's stool was negative for blood.

On December 10, Plaintiff gave a stool sample to Nurse Linda Mileur for testing. During rounds, Defendant Caliper told Plaintiff it was negative for blood.

## CONCLUSIONS OF LAW

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Ruffin-Thompkins v. Experian Information Solutions, Inc., 422 F.3d 603, 607 (7th Cir. 2005); Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc., 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970). See also Lawrence v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ballance v. City of Springfield, Illinois Police Department, 424 F.3d 614, 616 (7th Cir. 2005); Hottenroth v. Village of Slinger, 388 F.3d 1015, 1027 (7th Cir.2004). Even if the

facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." Spiegula v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). See also Anderer v. Jones, 385 F.3d 1043, 1064 (7th Cir. 2004).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Packman v. Chicago Tribune Co., 267 F.3d 628, 637 (7th Cir. 2001); Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997).

**Constitutional Retaliation**

In order to prove a retaliation claim, a plaintiff must prove that (1) his speech was constitutionally protected, and (2) the speech was a substantial or motivating factor in the retaliatory action. Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). If and when a plaintiff proves these two elements, the defendant can still avoid liability by establishing that the same action would have been taken in the absence of the plaintiff's protected speech. Id.

As to the first element, whether Plaintiff's speech was constitutionally protected, Plaintiff alleges that he engaged in constitutionally protected speech by stating that Defendant Powers

6

retaliated against him for filing a lawsuit against him and making "numerous legal assertions, via grievances." (Doc. 1 at 5).  Defendant Powers, however, states that Plaintiff has not produced evidence to specify the exercise of his First Amendment rights in the form of a grievance or a particular lawsuit filed prior to the date of any act or omission taken by Defendant Powers (Doc. 31 at 1).

There is no doubt that filing a lawsuit qualifies as constitutionally protected speech, and it is well established that "Penalizing a prisoner's exercise of the constitutional right to petition for redress of grievances is a constitutional tort." Simpson v. Nickel, 450 F.3d 303, 305 (7th Cir. 2006).  "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000) (citations omitted). "Thus, a prison official may not retaliate against a prisoner because that prisoner filed a grievance . . . . This is so even if the adverse action does not independently violate the Constitution." Id. See also Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002).

The Court rejects Defendant Power's argument that Plaintiff has failed to provide any evidence to show that he engaged in constitutionally protected speech.  In Plaintiff's Complaint, he states, "Conduct displayed by [Defendant Powers] I felt was surely retaliations (sic) due to [my] already filed June 11, 2003 lawsuit in this court for deliberate indifference to a serious medical need." (Complaint ¶ 8; Doc. 1 at 2).  Earlier in the Complaint, Plaintiff identified Defendant Powers as a defendant in a pending lawsuit filed in June of 2003, which alleged deliberate indifference to a serious medical need (Doc. 1 at 3).  Plaintiff even provided the case

number of this lawsuit in the Complaint (Doc. 1 at 3). There is, therefore, adequate evidence to show that Plaintiff has satisfied at least this first element of a retaliation claim.

With regard to the second element, which requires Plaintiff to prove that the speech was a substantial or motivating factor in the retaliatory action, Defendant Powers contends that there is no evidence to indicate that any act or omission by him was in response to Plaintiff exercising a constitutional right. While it is possible in some instances to prove retaliation through direct written evidence, see, e.g., Buise v. Hudkins, 584 F.2d 223, 226 (7th Cir. 1978), in most instances it is not possible to do so, and instead retaliation must be proved through circumstantial evidence. See Murphy v. Lane, 833 F.2d 106, 108 (7th Cir. 1987) ("[T]he ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent[.]"). "[R]etaliation may plausibly be inferred" from "a chronology of events." Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). See also Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985). In short, to prove retaliation, Plaintiff must show that his constitutionally-protected conduct was a substantial or motivating factor in Defendant's retaliatory conduct and that this same action would not have been taken absent the protected conduct. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Spiegla v. Hull, 371 F.3d 928, 941 (7th Cir. 2004).

In support of his contention that no evidence exists to indicate that any act or omission by Defendant Powers was in response to Plaintiff exercising a constitutional right, Defendant Powers provides an affidavit in which he states, "At this time, I am not aware if [Plaintiff] filed a grievance against me or not at any time prior to July of 2003 or afterwards," and "I did not alter my assessments or my plans of treatment based on any grievance filed by [Plaintiff] or any lawsuit filed by him." (Doc. 30-2 at ¶¶ 18, 20). Defendant Powers flatly denies any retaliation,

8

stating, "At no time have I retaliated against [Plaintiff] or anyone else in response to that inmate's filing a grievance or a lawsuit against me." (Doc. 30-2 at ¶ 25).

Plaintiff failed to respond to Defendant Power's Motion for Summary Judgment (Doc. 30) despite being warned by the Court of the consequences of failing to respond (Doc. 34). Therefore, the Court will accept Defendant's uncontested facts as true. Defendant Powers alleges in his sworn affidavit that he was not aware of any grievances filed against him during the period that Plaintiff alleges Defendant Powers retaliated against him, and that he did not alter his care of Plaintiff based on any lawsuits filed against him. Accepting these uncontested facts as true, the Court finds that summary judgment is appropriate in Defendant Powers' favor because Plaintiff has failed to meet his burden of showing that his filing of lawsuits or grievances was a substantial or motivating factor in the Defendant Powers' alleged retaliatory action.

## CONCLUSION

Therefore, for the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment (Doc. 30) be **GRANTED**, that Defendant Powers be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 21, 2008**

                                       s/ *Donald G. Wilkerson*
                                       **DONALD G. WILKERSON**
                                       **United States Magistrate Judge**